| Matter of Korn |
|:---:|
| 2025 NY Slip Op 34510(U) |
| December 3, 2025 |
| Surrogate's Court, New York County |
| Docket Number: File No. 2001-4153.3 |
| Judge: Rita Mella |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x
In the Matter of the First Intermediate Accounting of
Edward D. Korn, as Executor of the Will of

DECISION

EDITH R. KORN,

File No.: 2001-4153.3

Deceased.
------------------------------------------------------------------x

M E L L A, S.:

The following papers were considered on the motion for partial summary judgment and the motion for summary judgment:

| Papers Considered | Numbered |
|---|---|
| Notice of Motion (Amended) by Objectant Robert Korn for Summary Judgment; Affirmation of David Piedra, Esq., with Exhibits | 1-2 |
| Memorandum of Law in Support of Objectant's Motion | 3 |
| Notice of Motion (Amended) for Partial Summary Judgment by Petitioner Edward Korn; Affirmation of Frank W. Streng, Esq., with Exhibits | 4-5 |
| Memorandum of Law in Support of Petitioner's Motion | 6 |
| Affirmation of Regina Kiperman, Esq., in Opposition to Petitioner's Motion, with Exhibit | 7 |
| Affirmation of Frank W. Streng, Esq., in Opposition to Objectant's Motion | 8 |
| Reply Memorandum of Law in Support of Objectant's Motion | 9 |
| Reply Memorandum of Law in Support of Petitioner's Motion | 10 |

At the call of the calendar on May 20, 2025, the court heard argument on two motions in this accounting proceeding by Edward Korn (Edward) as Executor of the estate of his mother, Edith Korn (Decedent). Although styled as summary judgment motions, one by Edward and one by objectant Robert Korn (Robert), the court concluded that the motions were more aptly described as motions to determine whether – after the trial decision resolving Robert's objections, as modified on appeal by the Appellate Division, First Department – Robert is owed interest, and, if so, in what amount. In treating the motions as such, the court granted Robert's motion and denied Edward's as indicated below.

<u>Relevant Background</u>

Decedent died on November 12, 2001, survived by her three sons, Edward, Robert, and William. Her will was admitted to probate in this court on September 28, 2004, and Letters Testamentary issued to Edward as nominated executor. As pertinent here, Edward initially filed his account as Executor for the period from Decedent's death through December 31, 2006, and then supplemented his account to cover the period through July 31, 2009 (as supplemented, the Account). Robert filed separate objections to each of these accounts, which were then tried before Acting Surrogate Troy Webber, who issued a lengthy decision on May 27, 2011 (*Matter of Korn*, Sur Ct, NY County, May 27, 2011, Webber, J., Index No. 2001-4253.3 [2011 Trial Decision]).

Among the objections of Robert that Judge Webber adjudicated were those challenging the propriety of Edward's allocation of a $2.4 million premium he negotiated in connection with the 2006 sale of real property in Manhattan known as "Florida Flats" in which Decedent and her husband, Robert Sr., each had a 5.833% interest. Incident to the sale, the entire sale premium (Florida Flats Premium) was paid to a trust (Marital Trust) established under the will of Robert Sr., who had died in 1989. Decedent was the lifetime beneficiary of the Marital Trust, of which Edward was the Trustee, and the remainder beneficiaries were Edward (25%), Robert (25%), William (25%), and two of Robert Sr.'s grandchildren (25%). Thus, although Decedent had an ownership interest in Florida Flats (which she left solely to Robert under her will), Edward had not negotiated for or paid to Decedent's estate any part of the Florida Flats Premium.

The sale of Florida Flats occurred following extensive litigation and a settlement among the interested parties. Although Judge Webber concluded that Edward's acceptance of the

2

Florida Flats Premium and execution of settlement documents regarding the sale as fiduciary were proper, she also determined that "[i]n applying the entire premium to the Marital Trust, Edward chose to benefit himself to the detriment of Robert" (2011 Trial Decision at 43). For this reason, she held that "one-half of the premium . . . should properly be allocated to [Decedent's] estate and paid to Robert [as beneficiary of Decedent's interest in Florida Flats under her will]" (*id.*). Judge Webber also determined that, incident to the proper allocation of one-half of the Florida Flats Premium, Edward should "pay Robert interest at the rate of six percent per annum from the date of the sale, Sept. 25, 2006, until October 9, 2009" *(id.* at 45).

On appeal of the March 2021 order memorializing the 2011 Trial Decision (2021 Order),[1] the Appellate Division, First Department, modified the order in one discrete respect but otherwise affirmed it (*Matter of Korn*, 206 AD3d 529 [1st Dept 2022]. Specifically, the First Department modified Judge Webber's award of pre-decision interest through October 2009 to require that such interest be paid through May 27, 2011, the date of the 2011 Trial Decision, explaining that

> "Once the court decided to award pre-decision interest under CPLR 5001, it had no discretion to stop interest before the date of the decision. An award of interest from decision to entry of judgment was also mandatory under CPLR 5002. [Robert's] arguments regarding CPLR 5003 are, however, premature, as no final judgment has yet been entered" (*id.* at 531).

In otherwise affirming the 2021 Order, the First Department also confirmed that "[t]he reallocation of one-half of the trust's premium to the estate, plus the denial of commissions to [Edward] for his work as executor, were sufficient to redress the breaches" (*id.*).

---

1 There was a significant gap in time between the 2011 Trial Decision and the 2021 Order, which was entered on March 17, 2021.

[* 3]

After the First Department's decision, the parties agreed on the amount due from the Marital Trust for one-half of the Florida Flats Premium. That amount was $835,724.25 (one-half of the premium minus expenses). They did not agree, however, on the amount of prejudgment interest to be paid under CPLR 5001 and 5002 after the decision on appeal. Edward made a payment of $1,534,014.44 from the Marital Trust on January 5, 2023, claiming it was in full satisfaction of amounts owed (principal and interest) from the Marital Trust due to the re-allocation of one-half of the Florida Flats Premium back to Decedent's estate for payment to Robert.

According to Edward, due to Robert's 25% remainder interest in the Marital Trust, a portion of what was due from the Marital Trust, including prejudgment interest, is payable from Robert's interest in the Marital Trust and is thus an offset against the amount due Robert. Robert, for his part, disagreed with Edward on the question of who was directed to pay the prejudgment interest. Robert asserted that the 2021 Order (memorializing the 2011 Trial Decision), as modified by the First Department, required that Edward, as the Executor of Edith's estate or as her residuary beneficiary, pay such interest, and, thus, it was not payable from Robert Sr.'s Marital Trust at all. Robert also disagreed with Edward as to the rate of interest - whether it should be 6% or 9% annually from the date of the 2011 Trial Decision (May 27, 2011) to the date of the final decree, which remains to be issued. This disagreement led to the filing of the instant motions by Edward and Robert.

Discussion

Edward's motion contended that this court and the First Department confirmed that there was no surcharge against him other than the loss of commissions and re-allocation of one-half of

4

the Florida Flats Premium from the Marital Trust back to Robert as the beneficiary of Florida Flats under Decedent's will. Accordingly, any such prejudgment interest was due from the Marital Trust to which the entire Florida Flats Premium was paid. On this basis, Edward's motion sought to dismiss Robert's objections to the Account that related to the Florida Flats Premium.[2]

Robert's motion claimed, pursuant to CPLR 5002, that 9% annual interest is due from the date of the 2011 Trial Decision (May 27, 2011) to the entry of the final decree, and that Edward's $1,534,014.44 payment on January 5, 2023 was improper to the extent that prejudgment interest was paid from the Marital Trust. Robert also argued that the $1,534,014.44 payment was insufficient to pay (1) the principal due Decedent's estate for payment to Robert, namely one-half of the Florida Flats Premium, and (2) prejudgment interest that had accrued as of January 5, 2023.

After hearing the parties and reviewing the substantial record on these motions, the court granted Robert's motion. The court concluded that, after the First Department modified the 2011 Trial Decision as memorialized in the 2021 Order, Robert was entitled to prejudgment interest from Edward, as Executor, on one-half the value of the Florida Flats Premium that was misallocated to the Marital Trust. Consequently, the court determined that Edward, as Executor, owed prejudgment interest as follows: (1) pre-decision simple annual interest at the rate of 6%, pursuant to CPLR 5001,[3] from the date of the Florida Flats sale, September 25, 2006, until the

---

2 Those objections are Nos. 9, 20, 25, 26, 27, 28, 31, 35, and 36 to the Executor's Account ending December 31, 2006, and Nos. 24, 26 and 28 to the Executor's Account ending July 31, 2009.

3 CPLR 5001 grants the court discretion as to pre-verdict interest, which the court set at 6%.

5

date of the 2011 Trial Decision, May 27, 2011; (2) post-decision simple annual interest at the non-discretionary rate of 9%, pursuant to CPLR 5002,[4] from the date of the 2011 Trial Decision or May 27, 2011 to the entry of this court's Order on March 17, 2021; and (3) that annual simple interest continues to accrue after the 2021 Order (March 18, 2021) at the non-discretionary rate of 9% per year, as required under CPLR 5002, until the accounting decree or order directing the payment of the total amount due Robert is entered.

In view of these determinations, the court agreed with Robert that the payment made by Edward on January 5, 2023, in the amount of $1,534,014.44, did not satisfy the full amount due Robert in principal and interest. Starting on January 6, 2023, the balance due (after crediting Edward's payment of $1,534,014.44) was $652,711.81, and this balance has accrued daily interest of $160.94 (based on 9% annual interest). The court noted that, as of February 18, 2025, the total amount due Robert was $777,442.36, but this balance continues to accrue daily interest.

The court further concluded that, in accordance with the decisions of Judge Webber and the First Department as well as the 2021 Order, the prejudgment interest owed to Robert is to be paid by Edward in his capacity as Executor. The court determined that there was no basis to conclude that either this court or the First Department directed a non-party, the Marital Trust created under the will of Decedent's husband, to pay the interest imposed on an amount payable as a result of Edward's breach of fiduciary duty in his capacity as Executor.

In view of this resolution of Robert's motion, the court also determined that his objections to the Account relating to the sale of the Florida Flats and the interest imposed by this

---

4 CPLR 5002 makes mandatory the imposition of 9% interest after the verdict or posttrial decision to the date of final judgment (*see Matter of Doman*, 150 AD3d 994 [2d Dept 2011]).

[* 6]

court (as modified by the First Department) on one-half of the Florida Flats Premium obtained by Edward in connection with that sale could not be dismissed, and instead, the court sustained those objections to the extent indicated above, and denied Edward's motion to dismiss these objections.

In disposing of the motions in this manner, the court rejected as meritless, under CPLR 5002, Edward's argument that, because on appeal he argued that 6% post-verdict interest applied and the First Department did not explicitly mention it, that the First Department implicitly determined that a 6% rate of interest applied until the entry of the final decree on the accounting. Likewise, the court found unavailing Edward's suggestion that the 6% rate of interest on delayed distributions that had been set forth in EPTL 11-1.5(d) – prior to its repeal in 2014 (L 2014, c 404) – implicitly capped the interest rate this court could apply to an order after trial (*cf. Matter of Marsh*, 106 AD3d 1009 [2d Dept 2013]). Finally, the court considered that there were no assertions here that a party engaged in such egregious, inequitable conduct which could warrant a possible forfeiture of post-verdict interest (*see Pollock v Collipp*, 138 AD2d 584 [2d Dept 1988]). Nor were there allegations of a rejection of a previous tender of payment (*see Feldman v Brodsky*, 12 AD2d 347 [1st Dept 1961]).

The parties, having confirmed that no other issue prevents a decree from issuing on the Account, the decree on the Account should be settled within 30 days of the date of this decision. If there are delays, Robert may choose to settle an order directing the payment of the monies due him, specifying principal and interest as of the settlement date.

Clerk to notify.

Dated: December 3, 2025

_____
SURROGATE

7